IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES GREEN, | § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | 1:23-CV-1006-DII |
| TMX FINANCE OF TEXAS, INC., | | |
| Defendant. | | |

## **ORDER**

Before the Court is Defendant TMX Finance of Texas, Inc.'s ("Defendant") motion to dismiss and to compel arbitration. (Dkt. 17). Plaintiff James Green ("Plaintiff") filed a response in opposition. (Dkt. 19).[1] Having considered the parties' briefs, the evidence, and the relevant law, the Court finds that Defendant's motion should be granted in part.

Plaintiff, proceeding *pro se*, filed his original complaint in this case on August 25, 2023, (Dkt. 1), and an amended complaint on November 13, 2023, (Dkt. 13). Plaintiff alleges that Defendant violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. (Am. Compl., Dkt. 13, at 2–3). Plaintiff alleges that he visited a TitleMax location on September 8, 2022, where a representative "submitted a loan" on his behalf without his knowledge. *Id*. He also alleges that there were "hidden fees" not explained in the Truth in Lending Act Disclosure provided to him. *Id*. On November 29, 2023,

---

[1] Plaintiff also filed a document titled "Amended Complaint," (Dkt. 18), that the Court will construe as an additional response in opposition to Defendant's motion. The Court comes to this conclusion because Plaintiff previously amended his complaint after Defendant filed its first motion to dismiss and to compel arbitration, (*see* Mot., Dkt. 11; Am. Compl., Dkt. 13), at which point the Court mooted the first motion to dismiss and to compel arbitration. (Text Order dated Nov. 15, 2023). The Court considers Plaintiff's filing at Dkt. 13 to be a true amended complaint because it states a more complete narrative of the claims that Plaintiff is bringing in a way that closely mirrors, but amends, Plaintiff's original complaint, (Dkt. 1). In contrast, the statements in Plaintiff's "Amended Complaint" at Dkt. 18 respond to arguments Defendant made in its first motion to dismiss and compel arbitration, rather than amending Plaintiff's amended complaint, (Dkt. 13).

Defendant filed the instant motion, alleging that Plaintiff is required to submit his claims to arbitration pursuant to the mandatory arbitration clause in the parties' contract. (Mot., Dkt. 17, at 1). Defendant requests that the Court compel arbitration and dismiss this action. (*Id.*).

The Federal Arbitration Act (the "FAA") permits a party to file a motion to compel arbitration based on "the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." 9 U.S.C. § 4. "Enforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into any arbitration agreement at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Services, Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Questions of an arbitration agreement's existence and validity are governed by state law. *See, e.g.*, *Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019).

As to the first requirement, the Court finds that a valid contract exists and that the parties entered into an arbitration agreement as part of this contract. Defendant attached to its motion the parties' Loan Agreement, Promissory Note and Security Agreement (the "Contract") that Plaintiff and Defendant entered into on September 8, 2022, relating to a 2008 Jaguar XJ, VIN No. SAJWA82BX8SH20849 (the "Vehicle"). (Contract, Dkt. 17-1, at 4–14). The Contract provides Defendant with a lien and security interest in the Vehicle. (*See id.* ¶ 13). The Contract also contains a mandatory arbitration clause governed under the FAA, compelling arbitration for matters that relate to the Contract, the Vehicle, and the services at issue in the Contract, as well as Plaintiff's dealings with Defendant. (*See id.* ¶ 32). In addition, the Contract contains a reference to the arbitration clause at the top of the document, and the arbitration clause itself is presented in an easy-to-understand, question-and-answer chart. (*See id.* at p. 1 and ¶ 32). Both Plaintiff and Defendant are signatories to the Contract, signifying their agreement to all provisions in the Contract, including the arbitration agreement. (*See id.* at p. 10). The Contract also contains a provision notifying Plaintiff that he had the

2

ability to opt-out of the arbitration clause if he notified Defendant by letter within sixty days of the signing of Contract. (*See id.* at p. 7). Defendant represents that Plaintiff never exercised his opt-out rights. (Mot., Dkt. 17, at 4).

In his Amended Complaint and his responses to Defendant's motion, Plaintiff alleges that he never agreed to the arbitration provision. Plaintiff states that he "only signed for a lien on my title" and that he did not sign the arbitration clause because the TitleMax representative that he dealt with did not show him or tell him about the arbitration agreement. (Am. Compl., Dkt. 13, at 3). He admits that the "signature [he] signed for the lien on the title and the signature on the contract is the same" but states that he doesn't know how the signature got onto the contract. (*Id.*). Plaintiff claims that his signature on the document for the lien was "copied and pasted on" the Contract and that the TitleMax representative fraudulently signed the agreement. (*Id.*; Resp., Dkt. 19, at 2).

The Court, however, finds Plaintiff's allegations to be conclusory. By Plaintiff's own admission, he did sign the document creating the lien on the Vehicle's title, (*see* Am. Compl., Dkt. 13, at 3). This document—in other words, the Contract—also contained the arbitration agreement, meaning that Plaintiff has admitted to agreeing to the arbitration provision. Defendant also presents evidence, in the form of a DocuSign certificate, that indicates that Plaintiff signed the Contract using the DocuSign program. (Mot., Dkt. 17, at 4; Ex. A-2, Dkt. 17-1, at 16–17). Defendant provides an affidavit from its corporate representative Christopher Dunn who attests that when using the DocuSign program, a customer physically signs her signature only one time and then adopts that physical signature by clicking a "sign" button in each electronic document. (Dunn Aff., Dkt. 17-1, ¶ 7). Further, Plaintiff expressly consented to the use of electronic signatures by signing a form titled Consent to Electronic Disclosures, Communications and Signatures (the "Consent"). (*See* Exhibit A-3, Dkt. 17-1, at 19–20).

Under the FAA, when a non-movant places the existence of the contract containing the arbitration agreement "in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. "If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue." *Id.* However, "[t]o put the Agreement's existence 'in issue' for FAA purposes, plaintiffs 'must make at least some showing that under prevailing law, [they] would be relieved of [their] contractual obligations to arbitrate if [their] allegations proved to be true and produce some evidence to substantiate [their] factual allegations." *Butler v. Z&H Foods, Inc.*, No. 21-20086, 2021 WL 4073110, at *1 (5th Cir. Sept. 7, 2021) (per curiam) (quoting *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002)) (alterations in original). "[W]ithout corroborating evidence, self-serving affidavits will not suffice to entitle the plaintiffs to a . . . trial." *Id.*

The Court finds that Plaintiff's claims do not sufficiently put the Contract's validity at issue because he has not provided any corroborating evidence of his otherwise conclusory allegations. *See Wright v. Igloo Products Corp.*, No. CV H-16-202, 2016 WL 11189811, at *3 (S.D. Tex. Dec. 13, 2016), *report and recommendation adopted by* 2017 WL 354239 (S.D. Tex. Jan. 24, 2017) (upholding the validity of an arbitration agreement where a plaintiff made only conclusory statements that her signature was a forgery and failed to provide any evidence to support her claim). Because Plaintiff has failed to sufficiently put the validity of the arbitration agreement at issue, the Court need not hold a hearing, but rather, it can decide the issue of contract formation on the evidence submitted by the parties. *See Wright*, 2016 WL 11189811, at *3. Based on the evidence submitted by Defendant, the Court finds that a valid arbitration agreement existed because Plaintiff signed the Contract, which contained an arbitration provision, and Plaintiff did not opt-out of this provision.

The second step in evaluating whether to enforce an arbitration agreement requires the Court to determine whether Plaintiff's claims are covered by the arbitration agreement. Arbitration "should not be denied unless it may be said with positive assurance that an arbitration clause is not

4

susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 650 (1986); *see Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990). Any doubts as to whether the allegations at issue fall within the scope of the agreement must be resolved in favor of arbitration. *AT&T Technologies, Inc.*, 475 U.S. at 650; *Neal*, 918 F.2d at 37.

The arbitration provision in the Contract provides that the parties agree to arbitrate "Disputes" involving the parties. (Contract, Dkt. 17-1, ¶ 32). "Disputes" is defined to have a "broad meaning" and includes:

> . . . each and all claims and disagreements related directly or indirectly to or associated with . . . (i) [Plaintiff's] credit application; (ii) this Note; (iii) the Vehicle; (iv) the Loan; (v) [Plaintiff's] dealings with Lender; (vi) [Plaintiff's] dealings with any Related Party; (vii) any prior applications and agreements involving Lender and [Plaintiff]; (viii) extensions, renewals, refinancings, and payment plans associated with the Loan; (ix) collections activities; (x) Vehicle recovery activities; (xi) payment processing activities and payment authorizations; and (xii) privacy and customer information matters.

(*Id.* ¶ 21(a)). Here, Plaintiff's claims clearly arise directly out of the Contract and Plaintiff's dealings with Defendant because Plaintiff challenges the propriety of the loan that Defendant's representative allegedly made on his behalf and alleges that Defendant's representative failed to disclose "hidden fees" that were part of the transaction. Accordingly, the Court finds that Plaintiff's claims are covered by the arbitration agreement that the parties signed.

Because the Court finds that the parties made an agreement to arbitrate the claims that Plaintiff asserts, the Court will grant Defendant's motion in part and compel the parties to arbitration. Defendant also requests that this Court dismiss this action for lack of subject matter jurisdiction due to the arbitration agreement. (Mot., Dkt. 17, at 1–2). The FAA provides that a federal court should stay a civil action upon finding that an issue is referable to arbitration. 9 U.S.C. § 3. When all the issues in an action must be submitted to arbitration, a court may—not must—

dismiss the action. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *see also Apache Bohai Corp. v. Texaco China*, 330 F.3d 307, 311 & n.9 (5th Cir. 2003) (finding that the decision of the district court to stay the case pending arbitration was not an abuse of discretion). The Court therefore finds that a stay pending arbitration, rather than dismissal, is appropriate.

For these reasons, **IT IS ORDERED** that Defendant's motion to dismiss and compel arbitration, (Dkt. 17), is **GRANTED IN PART**. Defendant's motion is **GRANTED** insofar as Plaintiff's claims are **STAYED** pending arbitration. All other relief requested in Defendant's motion, including dismissal, is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file quarterly joint status reports detailing the status of the arbitration proceedings, with the first status report being due on or before **May 2, 2024**.

**SIGNED** on February 2, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE